IN THE UNITED STATES
COURT OF APPEALS FOR
THE FIFTH CIRCUIT



U.S. COURT OF APPEALS
RECEIVED
Feb 20, 2024
FIFTH CIRCUIT

DEEP SOUTH CENTER FOR
ENVIRONMENTAL JUSTICE,
HEALTHY GULF, and ALLIANCE
FOR AFFORDABLE ENERGY,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, in his official capacity as
Administrator of the U.S. Environmental
Protection Agency,

Respondents.

Case No. _____

## PETITION FOR REVIEW

Pursuant to Administrative Procedure Act, 5 U.S.C. § 704, Safe Drinking Water Act, 42 U.S.C. § 300j-7, Federal Rule of Appellate Procedure 15(a), and Circuit Court Rule 15, DEEP SOUTH CENTER FOR ENVIRONMENTAL JUSTICE, HEALTHY GULF, and ALLIANCE FOR AFFORDABLE ENERGY (hereafter "PETITIONERS"), petition this Court for review of the United States Environmental Protection Agency's ("EPA") final rule, promulgated January 5, 2024, revising the state of Louisiana's Safe Drinking Water Act Section 1422

1

underground injection control (UIC) program to include Class VI injection well primary enforcement responsibility (primacy). In accordance with local Rule 15.1(b), a copy of the final rule is attached hereto as Exhibit A.

In accordance with Rule 15(c) of the Federal Rules of Appellate Procedure, parties that may have participated in the underlying procedure have been served with a copy of this Petition. The Certificate of Service to these parties is attached as Exhibit B. Pursuant to Federal Rule of Appellate Procedure 15(c), attached hereto as Exhibit C is a list of Respondents specifically identifying the Respondents' names and addresses.

This Court has jurisdiction and is a proper venue for this action pursuant to 42 U.S.C. § 300j-7(a)(2) because the Petitioners are organizations based in Louisiana, and the final action being reviewed directly affects their operations in Louisiana.

Petitioners respectfully request that this Court hold unlawful, vacate, and set aside the final rule, and grant any such further relief as may be deemed just and proper.

Dated: February 20, 2024		Respectfully submitted,

**EARTHJUSTICE**

/s/ *James Yskamp*
James Yskamp (PA319444)
25000 Euclid Ave, Ste. 305
PMB 351
Euclid, OH 44117
Telephone: (570) 404-0237
Fax: (312) 667-8961
jyskamp@earthjustice.org

/s/ *Elizabeth Livingston de Calderon*
Elizabeth Livingston de Calderon
(LA 31443)
900 Camp Street, Unit 303
New Orleans, LA 70130
Telephone: (504) 910-1712
ecalderon@earthjustice.org

*Counsel for Petitioners*

# EXHIBIT A



and contractor-operated facilities engaged in USPS mail operations; private sector employers within the secured borders of all United States military installations where access is controlled; private sector employers within the borders of Federal enclaves, including property where the Federal government reserved jurisdiction when the State of California entered the Union and where Federal properties were acquired from the State of California with the consent of the State legislature; private sector employers and Native American-owned or tribal workplaces within the borders of all U.S. Government recognized Native American Reservations or on lands held in Trust for the various tribes in California; and maritime employment (except marine construction, which the State covers on bridges, and on shore) on the navigable waters of the United States. Federal responsibility will also continue to be exercised with regard to investigation and inspection for the purpose of carrying out the monitoring obligations under Section 18(f) of the OSH Act, 29 U.S.C. 667(f), as implemented by 29 CFR part 1954, and the enforcement of complaints filed with Federal OSHA under the OSH Act's whistleblower provision, Section 11(c), 29 U.S.C. 660(c). For further information please visit *https://www.osha.gov/stateplans/ca.*

## Authority and Signature

Douglas L. Parker, Assistant Secretary of Labor for Occupational Safety and Health, U.S. Department of Labor, 200 Constitution Avenue NW, Washington, DC 20210, authorized the preparation of this notice. OSHA is issuing this notification under the authority specified by Section 18 of the Occupational Safety and Health Act of 1970 (29 U.S.C. 667), Secretary of Labor's Order No. 8–2020 (85 FR 58393 (Sept. 18, 2020)), and 29 CFR parts 1902 and 1953.

Signed in Washington, DC.

**Douglas L. Parker,**

*Assistant Secretary of Labor for Occupational Safety and Health.*

[FR Doc. 2024–00047 Filed 1–4–24; 8:45 am]

**BILLING CODE 4510–26–P**

## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 147**

[EPA–HQ–OW–2023–0073; FRL 9916–02–OW]

### State of Louisiana Underground Injection Control Program; Class VI Primacy

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency is approving an application from the state of Louisiana to revise the state's Safe Drinking Water Act (SDWA) section 1422 underground injection control (UIC) program to include Class VI injection well primary enforcement responsibility (primacy). This final rule allows the Louisiana Department of Natural Resources to issue UIC permits for geologic carbon sequestration facilities as Class VI wells and ensure compliance of Class VI wells under the UIC program within the state. The EPA will remain the permitting authority for all well classes in Indian lands within the state and will also oversee Louisiana's administration of the state's UIC Class VI program as authorized under SDWA.

**DATES:** This final rule is effective on February 5, 2024. The Director of the Federal Register approved this incorporation by reference in accordance with 5 U.S.C. 552(a) and 1 CFR part 51 on February 5, 2024. For judicial purposes, this final rule is promulgated as of January 5, 2024.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–HQ–OW–2023–0073. All documents in the docket are listed on the *http://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* confidential business information (CBI) or other information whose disclosure is restricted by law. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available electronically through *http://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** Suzanne Kelly, Drinking Water Infrastructure Development Division, Office of Ground Water and Drinking Water (4606M), Environmental Protection Agency, 1200 Pennsylvania Ave. NW, Washington, DC 20460; telephone number: (202) 564–3887; or Lisa Pham, U.S. EPA Region 6, Groundwater/UIC Section (Mail code WDDG), 1201 Elm Street, Suite 500, Dallas, Texas 75720–2102; telephone number: (214) 665–8326. Both can be reached by emailing: *LAClassVINOA@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

Table of Contents
I. Introduction
   A. UIC Program and Primary Enforcement Authority (Primacy)
   B. Class VI Wells Under the UIC Program
   C. Louisiana UIC Programs
   D. Final Rule
II. Legal Authorities
III. Louisiana's Application for Class VI Primacy
   A. Background
   B. Public Participation Activities Conducted by Louisiana
   C. Environmental Justice (EJ) in Class VI Permitting
   D. Summary of the EPA's Comprehensive Evaluation
   E. Public Participation Activities Conducted by the EPA
IV. Public Comments and the EPA's Responses
   A. Public Comments
   B. The EPA's Response to Comments
V. Incorporation by Reference
VI. Statutory and Executive Order Reviews
   A. Executive Order 12866: Regulatory Planning and Review and Executive Order 14094: Modernizing Regulatory Review
   B. Paperwork Reduction Act (PRA)
   C. Regulatory Flexibility Act (RFA)
   D. Unfunded Mandates Reform Act (UMRA)
   E. Executive Order 13132: Federalism
   F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments
   G. Executive Order 13045: Protection of Children From Environmental Health and Safety Risks
   H. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use
   I. National Technology Transfer and Advancement Act
   J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations; Executive Order 14096: Revitalizing Our Nation's Commitment to Environmental Justice for All
   K. Congressional Review Act (CRA)
VII. References

## I. Introduction

*A. UIC Program and Primary Enforcement Authority (Primacy)*

The Safe Drinking Water Act (also known as SDWA), 42 U.S.C. 300h–1, was passed by Congress in 1974. It protects public health by regulating the nation's public drinking water supply, including both surface and groundwater

sources. The SDWA requires the EPA to develop requirements for state and Tribal Underground Injection Control programs. These programs regulate the injection of fluids (such as water, wastewater, brines from oil and gas production, and carbon dioxide) to protect underground sources of drinking water. USDWs are aquifers or parts of aquifers that supply a public water system or contain enough groundwater to supply a public water system. *See* 40 CFR 144.3.

The UIC program regulates various aspects of an injection well project. These include technical aspects throughout the lifetime of the project from site characterization, construction, operation, and testing and monitoring through site closure, as well as permitting, site inspections, and reporting to ensure well owners and operators comply with UIC regulations.

SDWA section 1422 directs the EPA to establish requirements that states, territories, and federally recognized Tribes (hereafter referred to as applicants) must meet to be granted primary enforcement responsibility or ''primacy'' for implementing a UIC program, including a Class VI program. An applicant seeking primacy under SDWA section 1422 for a Class VI program must demonstrate to the EPA that the applicant's Class VI program meets federal requirements to protect USDWs, including jurisdiction over underground injection and provisions for the necessary civil and criminal enforcement remedies under SDWA.

The EPA conducts a comprehensive technical and legal evaluation of each primacy application to assess and confirm that the proposed program meets the federal regulatory requirements and to evaluate the effectiveness of the state's proposed program at protecting USDWs. Louisiana's application included the following elements: Louisiana's Class VI-related UIC statutes and regulations; documents describing Louisiana's public participation process when adopting its proposed Class VI program; a letter from the Governor of Louisiana requesting Class VI primacy; a Program Description that explains how the state intends to carry out its responsibilities; a state Attorney General's Class VI statement of enforcement authority; and an addendum to the existing Memorandum of Agreement between the EPA and Louisiana describing the administration, implementation, and enforcement of the Louisiana's Class VI program.

*B. Class VI Wells Under the UIC Program*

Class VI wells are used to inject carbon dioxide into deep rock formations for the purpose of long-term underground storage, also known as geologic sequestration. Geologic sequestration, when used as a part of carbon capture and storage and carbon dioxide removal projects (such as projects that remove carbon dioxide from the atmosphere), is a promising tool for reducing the amount of carbon dioxide in the atmosphere. Class VI injection wells are regulated under an existing, rigorous SDWA permitting framework that protects USDWs.

The UIC Class VI program provides multiple safeguards that work together to protect USDWs and human health. Owners or operators that wish to inject carbon dioxide for the purpose of geologic sequestration must demonstrate that their injection well will meet all regulatory requirements and receive a Class VI permit for each well. The UIC Class VI program requires applicants to meet strict technical, financial, and reporting and record keeping requirements to obtain a Class VI permit, including:

• Site characterization to ensure the geology in the project area will contain the carbon dioxide within the zone where it will be injected.

• Modeling to delineate the predicted area influenced by injection activities through the lifetime of operation.

• Evaluation of the delineated area to ensure all potential pathways for fluid movement have been identified and addressed through corrective action.

• Well construction requirements that ensure the Class VI injection well will not leak carbon dioxide.

• Testing and monitoring throughout the life of the project, including after carbon dioxide injection has ended. Requirements include, for example, testing to ensure physical integrity of the well, monitoring for seismic activity near the injection site, monitoring of injection pressure and flow, chemical analysis of the carbon dioxide stream that is being injected, and monitoring the extent of the injected carbon dioxide plume and the surrounding area (*e.g.,* ground water) to ensure the carbon dioxide is contained as predicted.

• Operating requirements (*e.g.,* injection pressure monitoring and mechanical integrity testing requirements) to ensure the injection activity will not endanger USDWs or human health.

• Financial assurance mechanisms sufficient to cover the cost for all phases of the geologic sequestration project including the post injection site care period until site closure has been approved by the permitting authority.

• Emergency and remedial response plans.

• Reporting of all testing and monitoring results to the permitting authority to ensure the well is operating in compliance with all permit and regulatory requirements.

The permitting authority ensures that these protective requirements are included and implemented for each Class VI permit. A draft of each Class VI permit must be made available to the public for comment before a final permit is issued.

*C. Louisiana UIC Programs*

The state of Louisiana received primacy for Class I, III, IV, and V injection wells under SDWA section 1422, and Class II injection wells under SDWA section 1425 on March 23, 1982. On September 17, 2021, Louisiana applied to the EPA under section 1422 of SDWA for primacy for Class VI injection wells located within the state, except those located on Indian lands. On December 9, 2022, and January 11, 2023, the EPA Administrator Michael S. Regan sent letters to governors and Tribal leaders calling for partnership to advance the twin goals of combatting climate change and supporting environmental justice. In the letters, the EPA encouraged states and Tribes seeking primacy to incorporate EJ and equity considerations into proposed UIC Class VI programs. During development of the proposed rule, Louisiana revised its Class VI MOA addendum to incorporate all the EJ elements described in the letter, including elements related to implementing an inclusive public participation process, incorporating EJ and civil rights considerations in permit review processes, enforcing Class VI regulatory protections, and incorporating mitigation measures. During the comment period for the EPA's proposal, Louisiana signed into law Act No. 378 (HB 571), which revised portions of Louisiana law relevant to LDNR's application effective June 14, 2023. After the comment period, on June 30, 2023, LDNR supplemented its Class VI primacy application to include Act No. 378. In response, on August 16, 2023, the EPA published a Notice of Availability in the **Federal Register** (88 FR 55610) providing a 30-day comment period specific to LDNR's supplement to its primacy application, since this information was not available for public review and comment at the time of the proposal. That comment period closed on September 15, 2023.

*D. Final Rule*

In this final rule, the EPA is approving Louisiana's application because the EPA has determined that the application meets all applicable requirements for approval under SDWA section 1422 and the state is capable of administering a Class VI program in a manner consistent with the terms and purposes of SDWA and applicable UIC regulations. The EPA will remain the permitting authority for all UIC well classes on Indian land within the state (including Class VI wells) and will also oversee Louisiana's administration of the state's UIC Class VI program as authorized under SDWA.

## II. Legal Authorities

This final rule is issued under authority of SDWA sections 1422 and 1450, 42 U.S.C. 300h–1 and 300j–9.

Section 1421 of SDWA requires the Administrator of the EPA to promulgate federal requirements for effective state UIC programs to prevent underground injection activities that endanger USDWs. Section 1422 of SDWA establishes requirements for states and Tribes seeking the EPA's approval of their UIC programs. It also requires that states and Tribes seeking approval demonstrate to the satisfaction of the Administrator that the applicant (after public notice) has adopted and will implement a UIC program which meets the requirements set forth under section 1421. The EPA's regulations establish procedures for the EPA's review, and approval or disapproval, of state or Tribal revisions to existing UIC programs already approved by the EPA. 40 CFR 145.32.

For states and Tribes that seek approval for UIC programs under section 1422 of SDWA and those seeking the EPA's approval of revisions to existing state and Tribal UIC programs, the EPA has promulgated regulations setting forth the applicable procedures and substantive requirements codified in 40 CFR parts 144, 145 and 146. 40 CFR part 144 outlines general program requirements that each state or Tribe must meet to obtain UIC primacy. 40 CFR part 145 specifies the procedures the EPA will follow in approving primacy programs, approving revisions to such programs, and withdrawing primacy programs and outlines the elements and provisions that a state or Tribe must include in its application. It also includes requirements for state or Tribal permitting programs (often by reference to certain provisions of 40 CFR parts 124 and 144), compliance evaluation programs, enforcement authority, and information sharing. 40 CFR part 146 contains the technical criteria and standards applicable to each well class, including Class VI wells.

## III. Louisiana's Application for Class VI Primacy

*A. Background*

On September 17, 2021, Louisiana submitted to the EPA a program revision application to add Class VI injection wells to the state's SDWA section 1422 UIC program. The UIC program revision package included a description of the state's UIC Class VI program, copies of all applicable rules and forms, a statement of legal authority, a summary and results of Louisiana's public participation activities for developing the proposed Class VI program, and an addendum to the existing MOA between Louisiana and the EPA's Region 6 office. The EPA reviewed the application for completeness and performed a technical evaluation of the application materials.

*B. Public Participation Activities Conducted by Louisiana*

In October 2020, LDNR published a notice of intent in the Louisiana Register to adopt Statewide Order No. 29–N–6 providing rules for Class VI injection wells. LDNR held a public comment period from October 20, 2020, to December 1, 2020, and provided the opportunity to request a public hearing. There was no request for a public hearing. LDNR received five comments, which did not result in changes to the proposed rule. LDNR later provided a second public comment period on the state's intent to seek Class VI Primacy from May 28, 2021, to July 13, 2021. LDNR held a public hearing at the LDNR Office in Baton Rouge on July 6, 2021. Notice of the comment period and public hearing was published in six newspapers across Louisiana, through an email mailing list, and on LDNR's website to garner statewide attention. LDNR received seven oral comments at the hearing and 21 written public comments. Commenters shared general concerns about the role of carbon capture and storage in mitigating climate change, sensitive coastal areas and erosion caused by pipelines, and the current pollution and environmental hazard burden in Louisiana. Commenters were also specifically concerned about whether LDNR had adequate resources to successfully permit and monitor Class VI projects and the state's assumption of liability after completion of projects. Environmental Justice was also a major concern, with commenters seeking a clear EJ review process and criteria, as well as a mechanism for Class VI projects to avoid impacts on already overburdened communities. LDNR responded to all public comments including details about increased staffing and resources for Class VI permitting responsibilities. Documentation of Louisiana's public participation activities, including comments received and responses by the LDNR, can be found in EPA's Docket ID No. EPA–HQ–OW–2023–0073.

*C. Environmental Justice (EJ) in Class VI Permitting*

People across the country have shared with the EPA concerns about the safety of carbon capture and storage and carbon dioxide removal projects as well as their concern that already environmentally overburdened communities may yet again bear a disproportionate environmental burden associated with geologic sequestration. Executive Order 12898 (59 FR 7629, February 16, 1994) and Executive Order 14096 (88 FR 25251, April 21, 2023) direct federal agencies, to the greatest extent practicable and permitted by law, to identify and address, as appropriate, disproportionate and adverse human health or environmental impacts on communities with EJ concerns. On December 9, 2022, and January 11, 2023, the EPA Administrator Michael S. Regan sent letters to governors and Tribal leaders calling for partnership to advance the twin goals of combatting climate change and supporting EJ. In the letters, the Administrator encouraged states and Tribes seeking primacy to incorporate EJ and equity considerations into proposed UIC Class VI programs, including in permitting. The Administrator's letters outlined a variety of approaches related to implementing an inclusive public participation process, consideration of EJ impacts on communities, enforcing Class VI regulatory requirements, and incorporating mitigation measures.

As part of developing this final rule, the EPA worked with the state of Louisiana to adopt the environmental justice approaches encouraged in the Administrator's letter, which Louisiana has incorporated into its primacy application. The EPA reviewed Louisiana's EJ approach as described in the state's Program Description and MOA addendum and compared it to the EJ elements discussed in the Administrator's letter. Louisiana has committed in its MOA addendum to adopt all of the EJ elements described in the letter, and in particular noted that inclusive public participation processes and incorporation of EJ and civil rights considerations in permit review will be

achieved through the methods set forth in the Program Description. For example, Louisiana committed in the MOA addendum to examine the potential risks of each proposed Class VI well to minority and low-income populations. The EPA supports these commitments. Furthermore, Louisiana's Program Description specifies that LDNR will require well owners or operators to conduct an EJ review as part of the Class VI application process. The Program Description also provides that LDNR intends to evaluate project sites using the EPA's EJ Screen and to utilize qualified third-party reviewers to conduct additional evaluation of the Class VI application when communities with EJ concerns and/or other increased risk factors are identified. The results of the review will be used by LDNR to determine if an enhanced public comment period will be required. Lastly, LDNR's Program Description provides that LDNR will require applicants to assess alternatives to the proposed site location and propose mitigating measures to ensure adverse environmental effects are minimized. The EPA supports each of these efforts described in LDNR's program description.

Based on its review of LDNR's MOA addendum and Program Description, the EPA concludes that Louisiana has addressed all EJ elements that were discussed in the Administrator's letter. The EPA supports LDNR's adoption of these approaches to protecting communities with EJ concerns. Louisiana's Class VI Program, as described in LDNR's primacy application, includes approaches to ensure that equity and EJ will be appropriately considered in permit reviews, and in LDNR's UIC Class VI program as a whole.

*D. Summary of the EPA's Comprehensive Evaluation*

The EPA conducted a comprehensive technical and legal evaluation of Louisiana's Class VI primacy application to assess and confirm that the state's UIC Class VI program meets federal regulatory requirements, and the EPA evaluated the effectiveness of the state's Class VI program. To be approved for Class VI primacy under SDWA section 1422, a state or Tribe must have a UIC program that meets federal requirements (40 CFR parts 124, 144, 145, and 146). The EPA evaluated Louisiana's UIC statutes and Class VI regulations against these federal requirements. The evaluation involved identifying and resolving any discrepancies between the state and federal UIC Class VI statutory and regulatory provisions prior to LDNR's submittal of the primacy application. The EPA's evaluation of the stringency and effectiveness of Louisiana's proposed Class VI program included an evaluation of Louisiana's Class VI Program Description, the state Attorney General's Class VI statement of enforcement authority, and the addendum to the MOA between the EPA and Louisiana, describing the administration, implementation, and enforcement of Louisiana's UIC Class VI program.

The EPA evaluated Louisiana's Class VI program description against 40 CFR 145.23, which identifies all the information that must be submitted as part of the program description. The EPA's evaluation of the program description includes reviewing the scope, structure, coverage, processes and organizational structure of the permitting authority. The EPA evaluated LDNR's permitting, administrative and judicial review procedures and reviewed the permit application, reporting, and manifest forms. The EPA also reviewed LDNR's description of the state's compliance tracking and enforcement mechanisms. The EPA evaluated LDNR's proposed schedule for issuing permits within the first 2 years after Class VI program approval. The EPA reviewed LDNR's description of the state agency staff who will carry out the Class VI program, including number, occupations, and general duties. The EPA also reviewed the Program Description to ensure that Louisiana has demonstrated that the state's Class VI program will have adequate in-house staff or access to contractor support for technical areas including site characterization, modeling, well construction, testing and monitoring, financial responsibility, regulatory and risk analysis expertise.

The EPA evaluated Louisiana's Class VI Attorney General's statement against 40 CFR 145.24 to ensure it meets federal requirements. The Attorney General's statement is required to ensure that a state's top legal officer affirms that state statutes, regulations and judicial decisions demonstrate adequate authority to administer the UIC Program as described in the program description and consistent with the EPA's regulatory requirements for UIC programs. The EPA independently evaluates and confirms that the Attorney General's statement certifies that the state either does not have environmental audit privilege and/or immunity laws, or, if there are environmental audit privilege and/or immunity laws, that they will not affect the ability of the state to meet the EPA's regulatory requirements regarding enforcement and information gathering.

The EPA evaluated Louisiana's Class VI MOA addendum against 40 CFR 145.25 to ensure it meets federal requirements. The MOA is the central agreement setting the provisions and arrangements between the state and the EPA concerning the administration, implementation, and enforcement of the state UIC Program. The EPA's evaluation includes ensuring that the MOA contains the necessary provisions pertaining to agreements on coordination, permitting, compliance monitoring, enforcement, and the EPA's oversight. For example, the LDNR Class VI MOA addendum specifies that LDNR and the EPA agree to maintain a high level of cooperation and coordination to assure successful and efficient administration of the UIC Class VI program. The EPA is aware that stakeholders have raised concern about Louisiana's long term liability provision in Louisiana Revised Statute (LA R.S.) 30:1109. As noted in the EPA's proposal, LDNR agreed in the MOA addendum that LDNR will not issue a certificate of completion pursuant to LA R.S. 30:1109 until the owner or operator submits a site closure report pursuant to 40 CFR 146.93(f) and Louisiana Code (LAC) 43:XVII.3633.A.6 and otherwise fully complies with the site closure requirements in 40 CFR 146.93 and LAC 43:XVII.3633.A. Additionally, LDNR agreed to coordinate with the EPA prior to LDNR approving any site closure to ensure doing so is consistent with the requirements of the federal Safe Drinking Water Act. During the comment period for the EPA's proposal, Louisiana signed into law Act No. 378 (HB 571), which revised Louisiana's long term liability provision in LA R.S. 30:1109. In this final rule, the EPA concludes that Louisiana's Class VI Program—considering the revisions made by Act 378 and as implemented consistent with the MOA addendum— meets federal requirements.

Louisiana has demonstrated that it has the legal authority to implement its Class VI program in conformance with the permit requirements found in 40 CFR 145.11. Louisiana's UIC Class VI permitting provisions are as stringent as permitting requirements found in 40 CFR 145.11. The state has incorporated necessary procedures, pursuant to 40 CFR 145.12 to support a robust compliance evaluation program for Class VI. For example, LDNR will maintain a program for periodic inspections of all Class VI facilities and activities subject to its authority. Additionally, Louisiana has the necessary civil and criminal

enforcement remedies pursuant to 40 CFR 145.13. The EPA has determined that Louisiana's enforcement authority related to the state's Class VI Program meets federal requirements. Louisiana's Class VI regulations regarding permitting, inspection, operation, and monitoring are at least as stringent as found in 40 CFR parts 145 and 146. Louisiana's reporting and recordkeeping requirements for Class VI wells are as stringent as found in 40 CFR 144.54 and 146.91.

*E. Public Participation Activities Conducted by the EPA*

On May 4, 2023, the EPA published a proposed rule in the **Federal Register** (88 FR 28450) to approve the state of Louisiana's application to implement a UIC program for Class VI injection wells within the state. The proposal established a 60-day public comment period that closed on July 3, 2023. The EPA held a three day in-person public hearing on June 21–23, 2023 in Baton Rouge, Louisiana and one virtual hearing on June 30, 2023. The EPA published notice of the public hearings on the EPA's website and in six major local newspapers in Louisiana. The EPA received oral comments from 156 people at the in-person public hearings and from 23 at the virtual hearing.

On June 30, 2023, LDNR supplemented its Class VI primacy application to include Act No. 378 (HB 571), which revised portions of Louisiana's law relevant to LDNR's application. On June 14, 2023, Act No. 378 was signed into law and went into effect during the comment period for the EPA's proposal. In response, on August 16, 2023, the EPA published a Notice of Availability in the **Federal Register** (88 FR 55610) providing a 30-day comment period specific to LDNR's supplement to its primacy application regarding Act No. 378, since this information was not available for public review and comment at the time of the proposal. This comment period closed on September 15, 2023.

On March 23, 2023, the EPA sent a written invitation to interested Tribes, requesting a consultation regarding the agency's review of Louisiana's request for Class VI program approval, in accordance with the EPA Policy for Consultation and Coordination with Indian Tribes (May 4, 2011). The EPA held a consultation conference call with interested Tribes on March 30, 2023. The Tribes did not raise any concerns during the consultation.

**IV. Public Comments and the EPA's Responses**

*A. Public Comments*

Following publication of the proposed rule, the EPA accepted public comments for 60 days. The EPA received 41,622 comments on the proposal from individuals and organizations representing a wide range of stakeholders, from individual citizens, energy, and industry groups, permittees, environmental and civil rights non-government organizations, local governments, members of the state Legislature, academia, and others. Of the comments received on the proposal, 36,151 were from mass mailing campaigns. In general, the EPA received comments from stakeholders that supported and opposed primacy approval.

Following publication of the NOA, the EPA accepted public comments for 30 days. The EPA received 6,997 comments from stakeholders similar to those received during the earlier public comment period for the proposal. Of the comments received on the supplemental notice, 6,940 were from mass mailing campaigns. In general, the majority of comments on the NOA that the EPA received supported primacy approval.

Each unique comment received for the proposal and the supplemental notice was read and considered in the development of this final rule. Copies of unique individual comments are available as part of the public record and can be accessed through the EPA's docket (ID No. EPA–HQ–OW–2023–0073). Documentation of the EPA's public participation activities, including comments received and the EPA's responsiveness summary can also be found in the docket (ID No. EPA–HQ–OW–2023–0073).

*B. The EPA's Response to Comments*

Comments received during the proposed rule and supplemental notice comment periods were similar to those received by the state of Louisiana during the state's public comment period. Commenters were concerned about the state's assumption of liability after completion of projects, whether LDNR had adequate staff and expertise to successfully permit and monitor Class VI projects, and LDNR's oversight of its existing UIC program. Commenters were also concerned about mitigation of risk, emergency response, community engagement, and Environmental Justice.

The EPA received comments during the proposal from commenters who stated that LDNR's proposed Class VI program meets or exceeds minimum federal requirements as well as from commenters who said that the state's proposed Class VI program failed to meet federal requirements. The EPA agrees with the many commenters that asserted that LDNR's proposed Class VI program meets the EPA's regulatory requirements and that approving Louisiana's Class VI primacy application is appropriate. The EPA worked closely with LDNR as the agency developed its regulations and Class VI primacy application. The final primacy application reflects the EPA's recommendations during that pre-application process. The EPA performed a thorough review of LDNR's primacy application, which describes how LDNR intends to oversee Class VI well owners or operators, including by reviewing permit applications, monitoring compliance with permits, and taking enforcement actions when appropriate.

Some commenters, noting that Louisiana has a state law provision concerning the transfer of long-term liability, argued that SDWA prohibits transfer of liability. The EPA disagrees that long term liability provisions are always incompatible with the SDWA and the EPA's UIC regulatory requirements. When promulgating its Class VI Rule (75 FR. 77272 Dec. 10, 2010), the EPA considered a range of comments regarding liability following site closure. Some commenters during that rulemaking urged that, "after a GS site is closed, liability should be transferred to the State or Federal government or to a publicly- or industry-funded entity," while others disagreed "that a public entity should bear liability following site closure." Ultimately, the EPA decided not to include regulatory provisions addressing long term liability after site closure in the Class VI Rule. The EPA explained this decision in part by noting that the SDWA does not grant the EPA the authority "to transfer liability from one entity (*i.e.,* owner or operator) to another." It is important to note that, in making this statement, the EPA was not interpreting its UIC regulatory requirements as prohibiting primacy states from allowing liability transfer after site closure, but merely noting that, when the EPA acts as the Class VI permitting authority, it cannot do so. In short, the EPA did not conclude in the 2010 Class VI rule that states that authorize liability transfer after site closure cannot receive UIC Class VI primacy. However, such state liability transfer provisions must be appropriately crafted so that the state's Class VI program meets UIC regulatory requirements. Certain provisions could result in stringency issues. For example,

such issues may arise if a state law authorizes liability transfer before the permittee has fulfilled all of its UIC regulatory obligations, including all site closure requirements identified at 40 CFR 146.93. Further, as noted in the 2010 Class VI Rule preamble, even after the former permittee has fulfilled all of its UIC regulatory obligations, it may still be held liable for previous regulatory noncompliance. Thus, there may be stringency issues if a state law authorizes the permitting agency to release a former permittee from liability for earlier UIC violations. Additionally, as noted in the 2010 Class VI Rule preamble, a former permittee may always be subject to an order the Administrator deems necessary to protect public health if there is fluid migration that causes or threatens imminent and substantial endangerment to a USDW. The EPA's UIC regulations require that state UIC programs possess similar emergency authority (40 CFR 144.12(e)). Stringency issues will likely arise if state liability transfer provisions prohibit the EPA or the state UIC authority from subjecting a former permittee to such an emergency order. In conclusion, the EPA disagrees with commenters that SDWA and the UIC regulatory requirements prohibit state long term liability transfer provisions; however, when such provisions exist, they must be crafted so that the state Class VI program meets federal UIC regulatory requirements.

The EPA also received comments stating that the state's liability transfer provisions in Louisiana Revised Statute (LA R.S.) 30:1109 were in direct conflict with the EPA's Class VI regulations. As mentioned in the EPA's proposed approval, the EPA was aware that stakeholders had raised concern about Louisiana's long-term liability provisions, and the EPA and LDNR worked together to address stakeholder concerns by specifying in the Class VI MOA addendum that LDNR would not issue a certificate of completion pursuant to LA R.S. 30:1109 until the owner or operator submits a site closure report pursuant to 40 CFR 146.93(f) and Louisiana Administrative Code (LAC) 43:XVII.3633.A.6 and otherwise fully complies with the site closure requirements in 40 CFR 146.93 and LAC 43:XVII.3633.A. On August 16, 2023, the EPA provided notice that LDNR supplemented its primacy application to incorporate Act 378, which revised portions of Louisiana law relevant to long term liability including at LA R.S. 30:1109. Many commenters strongly supported Louisiana's passage of Act 378 stating that it strengthens the state's Class VI program because it prevents the issuance of certificates until "Fifty years after cessation of injection into a storage facility" or "any other time frame established on a site-specific basis by application of the rules regarding the time frame for a storage operator's post-injection site care and site closure plan" which matches the post-injection site care timeframes in the EPA's regulations (*see* 40 CFR 146.93(b)). The EPA agrees that the statutory revisions to the long-term liability provisions resolve the concern that transfer of liability could occur before a site is closed and the non-endangerment standard is met. Act 378 requires that before a certificate may be issued, it must be demonstrated that the owner or operator "has complied with all applicable [UIC] regulations related to post-injection monitoring," the "facility has been closed in accordance with all [UIC] regulations related to site closure," and the "storage facility does not pose an endangerment to underground sources of drinking water, or the health and safety of the public."

Additional commenters asserted that while Act 378 narrowed the scope of operator liability exemptions that were adopted in 2009, the state still does not have equivalent enforcement authority required by section 40 CFR 145.13(a)(1). The EPA disagrees with commenters that the state does not have enforcement authority as required by 40 CFR 145.13(a)(1). Overall, 40 CFR 145.13(a) requires a state agency to possess the ability to enforce "violations of State program requirements." However, after an owner or operator has fully complied with all UIC Class VI regulatory requirements related to site closure, the former permittee is no longer subject to any Class VI regulatory requirements and therefore no "violations" could occur. Moreover, a certificate of completion issued pursuant to LA R.S. 30:1109 cannot release a former operator from any liabilities that arise from noncompliance with UIC regulatory requirements prior to issuance of the certificate. LA R.S. 30:1109.A(3). Further, as made explicit by Act 378, LDNR continues to possess authority to take emergency action to restrain any person, including a former operator of a Class VI well, from engaging in any activity which is endangering or causing damage to public health or the environment (*see* LAC 43:XVII.103.D.4). The EPA carefully reviewed Louisiana's statutes and regulations related to enforcement of its Class VI program and has determined that it meets federal requirements.

The EPA received a range of comments from stakeholders regarding LDNR's staff capacity and expertise. Some commenters expressed concern that LDNR has insufficient staff capacity and expertise to oversee the number of Class VI projects the commenters expected LDNR to eventually oversee. Conversely, other commenters stated that LDNR has a strong, well-established UIC program with dedicated, knowledgeable, and experienced staff. The EPA disagrees that LDNR staff lack the necessary expertise to oversee a Class VI program. The LDNR UIC program is comprised of staff with expertise in the variety of technical specialties needed to issue and oversee Class VI permits, including site characterization, modeling, well construction and testing, and finance. LDNR's staff competency is demonstrated via annual reviews with the EPA in accordance with the state's minimum qualifications for education and professional experience, and requirements to be a licensed professional engineer (P.E.) or geoscientist (or work under one) in good standing with either the Louisiana Professional Engineering and Land Surveying Board or Louisiana Board of Professional Geoscientists. The EPA understands that the state of Louisiana has a plan in place to expand its program to further support Class VI activities within the state by hiring seven additional staff and third-party contractors for modeling, risk and environmental justice analysis. In addition, the EPA stands ready to provide additional support as needed, including technical support, site specific analysis, and access to the experience and knowledge of the EPA staff in the regions, Headquarters, and the Office of Research and Development.

The EPA received a range of comments regarding LDNR's oversight of its existing UIC program. Some commenters stated that LDNR has significant institutional knowledge and expertise and has effectively regulated Class I–V injection wells and protected underground sources of drinking water since 1982. Other commenters stated that LDNR has a poor record of enforcing UIC and oil and gas program requirements and expressed concerns related to inspections, procedures for the public to report violations, whether fines are sufficient to deter noncompliance, and delays in enforcement. These commenters also provided examples of environmental incidents regulated by LDNR and other Louisiana agencies. They assert that LDNR is non-compliant with other environmental programs (*e.g.,* for

coastal and wetlands management), and asked the EPA to defer granting Class VI primacy until LDNR addresses these perceived deficiencies. The EPA notes that a number of the examples provided by commenters did not involve LDNR, which is the agency seeking Class VI primacy. Other examples did involve LDNR but were not related to UIC program implementation. The EPA agrees with commenters that inspections and enforcement actions are key components of a UIC program, and essential to ensuring compliance with UIC requirements. As LDNR describes in its Class VI MOA addendum with the EPA, LDNR will conduct periodic inspections of permittees to assess compliance with Class VI permits, to verify the accuracy of information submitted by operators in reporting forms and monitoring data, and to verify the adequacy of sampling, monitoring, and other methods to provide the information (MOA, Part III.D; *see also* 40 CFR 145.12(b)(2)). LDNR plans to devote 15 percent of its Class VI budget (first- and second-year Class VI budget estimates are $345,000 and $1.135 million respectively) to inspections and enforcement activities (Program Description, pg. 4). The EPA considers this to be appropriate and adequate to ensure that Class VI well owners or operators in Louisiana comply with the UIC requirements and their permits. With regard to Louisiana's current UIC program, all UIC enforcement and compliance records are publicly accessible on Louisiana's SONRIS Data Portal link at the top of the page at *https://www.sonris.com/* or onsite at the Injection and Mining Division of LDNR. Based on data it reports annually to the EPA, LDNR has over the past several years, taken an average of over 500 UIC enforcement actions annually. The EPA has determined that LDNR's Class VI program will have the capacity to perform the necessary inspections of all Class VI facilities and actives subject to LDNR's oversight to identify persons who have failed to comply with program requirements. 40 CFR 145.12(b). The EPA encourages residents to report violations to the state. Consideration of information submitted by the public about violations is a required element of 145.12(b)(3) and (b)(4). LDNR's Class VI primacy application indicates that LDNR has these programs in place at MOA Addendum 1, Sec. III.E. (p. 5) and Program Description, Sec. 5 (pp. 8–9). However, residents who are concerned that LDNR is not taking enforcement action against a violation of the UIC requirements may report a violation on the EPA's website at *www.epa.gov* (click on ''Report a Violation''), contact the EPA via the SDWA Hotline at (800) 426–4791, or email the EPA at *safewater@epa.gov.* The EPA will continue to oversee LDNR's administration of the SDWA Class VI program. The EPA conducts UIC program oversight to help ensure that states who have been granted primacy continue to implement their programs in a manner consistent with the SDWA and their memorandums of agreement with the EPA. *See* Class VI MOA addendum, section V, *EPA Oversight.* As part of the EPA's oversight responsibility, the EPA will conduct, at least annually, performance evaluations of the state's Class VI program using program reports and other requested information to determine state Class VI program consistency with the LDNR's approved program, SDWA, and applicable regulations. This includes a review of financial expenditures, progress on program implementation, and any departures from the Program Description; and MOA addendum. Any deficiencies in Class VI program performance will be shared with the state along with recommendations for improving state operations. In addition, the EPA's Region 6 Administrator may select Class VI activities and facilities within the state for the EPA to inspect jointly with the State. Further, in states with UIC primacy, the EPA maintains its independent authority to enforce violations of applicable UIC program requirements under SDWA 1423(a)(1), and its authority to act to address imminent and substantial endangerment under SDWA 1431.

Several commenters expressed concern that the state's Class VI UIC regulations do not have adequately robust monitoring mechanisms to mitigate risk to USDWs and ensure that projects are properly sited, permitted, and maintained. The EPA agrees that proper site selection and robust monitoring are fundamental components of the UIC program to ensure USDWs are protected. Further, the EPA finds that the monitoring requirements in LDNR's Class VI regulations, if properly implemented, adequately address the risks to USDWs associated with carbon dioxide injection for geologic sequestration because LDNR's monitoring requirements meet the EPA's Class VI regulatory requirements. For example, LAC 43: XVII.3625.A requires Class VI well owners or operators to develop and comply with an enforceable Testing and Monitoring Plan to verify that the geologic sequestration project is operating as permitted and is not endangering USDWs. The monitoring requirements of LDNR's Class VI rule are as stringent as those at 40 CFR 146.90 and ensure early warning of exceedances of operating conditions, damage to the injection well, changes in water quality, or unanticipated behavior of the carbon dioxide plume and pressure front that could endanger USDWs. Further, Louisiana regulations at LAC 43: XVII.3627 regarding monitoring for mechanical integrity are as stringent as the EPA's regulations on the same subject at 40 CFR 146.89 and LAC 43: XVII.3633 regarding post injection monitoring is as stringent as 40 CFR 146.93. The state's regulations, like the EPA's, require the development of enforceable testing and monitoring plans that are appropriately tailored to site-specific operational conditions and the geologic setting. The EPA concludes that this is the best approach for addressing the unique potential risks at each geologic sequestration project.

Additionally, some commenters asserted that the state's Class VI rule does not adequately address emergency scenarios (*i.e.,* evacuations and notification) involving endangerment to USDWs as well as situations that are broader than endangerment to USDWs. The EPA disagrees as LDNR's Class VI requirements for emergency and remedial response at LAC 43: XVII.625.A.1, are as stringent as the EPA's related requirements at 40 CFR 146.94 and are protective of USDWs. LDNR's regulations require Class VI well owners or operators to develop and comply with an enforceable site-specific Emergency and Remedial Response Plan with remedial actions to be taken in the event of an emergency in order to expeditiously mitigate any emergency situations and protect USDWs from endangerment. As stated in the EPA's 2018 UIC program Class VI Implementation Manual, the Emergency and Remedial Response Plan should consider the site operation, geology, local infrastructure, and the community's needs. While the federal Class VI regulations do not specify the specific content of the Emergency and Remedial Response Plan, the EPA encourages permittees in its 2012 UIC Class VI Well Project Plan Development Guidance to identify first responders (*e.g.,* police, fire) in the plan and include a section on how the owner or operator would communicate with first responders and the public about an emergency event.

Commenters asserted that LDNR lacks the statutory or regulatory authority to make the results of an EJ review part of a Class VI permitting decision or to

deny a permit based on EJ concerns. Commenters also expressed doubts about LDNR's or the state's commitment to EJ. The EPA acknowledges commenters' concerns about regulatory decisions not considering the environmental impacts of those decisions on disproportionately affected communities. In the Administrator's letter to state governors and Tribal leaders, the Administrator called for states seeking primacy to incorporate EJ and equity considerations into proposed UIC Class VI programs, including in permitting. The letter outlined a variety of approaches, including elements related to implementing an inclusive public participation process, consideration of EJ impacts on communities, enforcing Class VI regulatory requirements, and incorporating other mitigation measures. The EPA elaborated on these approaches in its Environmental Justice Guidance for UIC Class VI Permitting and Primacy that was released August 17, 2023. Additionally, the EPA's new UIC Class VI Grant Program (authorized by the Bipartisan Infrastructure Law) for states and Tribes seeking to establish or implement UIC Class VI primacy programs will require applicants to demonstrate how EJ and equity considerations are incorporated in their Class VI primacy programs. An integral part of Louisiana's Class VI primacy application (which includes a state Attorney Generals' statement that LDNR has authority to implement the Class VI Program as described) is a commitment to incorporating EJ considerations into the Class VI permitting process. LDNR's Program Description and Class VI MOA addendum both describe an EJ review process that is consistent with the EPA's guidance, including enhanced public participation, and incorporation of additional potential mitigation measures. LDNR's Class VI MOA addendum answers the EPA's request for states to incorporate EJ into their Class VI program by, among other things, adopting an inclusive public participation process. Louisiana will provide robust and ongoing opportunities for public participation, especially for lower-income people, communities of color, and those experiencing a disproportionate burden of pollution and environmental hazards. In its MOA addendum, LDNR described specific plans for tailoring notice of proposed Class VI wells to specific community needs and interests. Tailored public participation activities that LDNR may employ include scheduling public meetings at times convenient for residents, offering translation services where needed, enabling face-to-face or written feedback on permit applications early in the review process, convening local stakeholders and community groups for safety planning, and supporting the development of community benefits agreements (Class VI MOA addendum, Part II.H). The EPA agrees with commenters about the value of incorporating additional mitigation measures where appropriate for Class VI projects to address effects on already overburdened communities from all Class VI activities throughout the lifetime of the project. In its Class VI MOA addendum (Part II.H), Louisiana committed to work within its legal authority to prevent and/or reduce any adverse impacts to USDWs from well construction and operational activities. While the scope of Louisiana's UIC Program (and this primacy decision) is designed to protect USDWs, LDNR stated in its Class VI MOA addendum that it may work within its legal authority under state law to employ a range of mitigation measures to ensure that Class VI projects do not increase environmental impacts and public health risks in already overburdened communities. For example, LDNR's MOA addendum said such residential protection measures could include carbon dioxide monitoring and release notification networks, installation of enhanced pollution controls, or other measures to offset impacts by improving other environmental amenities for affected communities and providing resources for clean-up of previously degraded public areas.

## V. Incorporation by Reference

In this action, the EPA is approving a revision to the state of Louisiana's UIC Program for primacy for regulating Class VI injection wells in the state, except for those located on Indian lands. Louisiana's statutes and regulations incorporated by reference in this final rule are publicly available in EPA's Docket No. EPA–HQ–OW–2023–0073. This action amends 40 CFR 147.950 and incorporates by reference EPA-approved state statutes and regulations that contain standards, requirements, and procedures applicable to Class VI owners or operators.

For clarity, the EPA is reformatting the codification of Louisiana UIC Program statutes and regulations for Well Classes I, II, III, IV, and V that the EPA already approved in previous approval actions, and which are already incorporated by reference into 40 CFR 147.950. Instead of codifying Louisiana statutes and regulations as separate paragraphs, the EPA is incorporating by reference a compilation that contains "EPA-approved Louisiana SDWA § 1422 and § 1425 Underground Injection Control Program Statutes and Regulations for Well Classes I, II, III, IV, V, and VI," dated November 8, 2023. This compilation is incorporated by reference into 40 CFR 147.950 and is available at *https://www.regulations.gov* in the docket for this final rule. The EPA has also codified a table listing EPA-approved Louisiana Statutes and Regulations for Well Classes I, II, III, IV, V, and VI in 40 CFR 147.950, including those already incorporated by reference.

The EPA will oversee Louisiana's administration of the SDWA Class VI program and will continue to oversee Louisiana's administration of the programs for SDWA Class I, II, III, IV, and V wells. The EPA will require quarterly reports of non-compliance and annual UIC performance reports pursuant to 40 CFR 144.8. The MOA addendum between the EPA and Louisiana, signed by the Regional Administrator on March 3, 2023, articulates that the EPA will oversee the state's administration of the UIC Class VI program on a continuing basis to assure that such administration is consistent with the program MOAs, the state UIC grant application, and all applicable requirements embodied in current regulations and federal law. In addition, the MOA addendum provides that the EPA may request specific information including permits and the accompanying EJ reviews.

## VI. Statutory and Executive Orders Reviews

Additional information about these statutes and Executive orders can be found at: *https://www.epa.gov/laws-regulations/laws-and-executive-orders.*

### A. Executive Order 12866: Regulatory Planning and Review and Executive Order 14094: Modernizing Regulatory Review

This action is exempt from review under Executive Order 12866, as amended by Executive Order 14094, because the Office of Management and Budget has exempted, as a category, the approval of state UIC programs.

### B. Paperwork Reduction Act (PRA)

This action does not impose any information collection burden under the PRA. OMB has previously approved the information collection activities contained in the existing regulations and has assigned OMB control number 2040–0042. Reporting or recordkeeping requirements will be based on Louisiana's Class VI UIC Regulations,

and the State of Louisiana is not subject to the PRA.

*C. Regulatory Flexibility Act (RFA)*

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. This action does not impose any requirements on small entities as this action approves an existing state program.

*D. Unfunded Mandates Reform Act (UMRA)*

This action does not contain any unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. The action imposes no enforceable duty on any state, local, or Tribal governments or the private sector. The EPA's approval of Louisiana's Class VI program will not constitute a federal mandate because there is no requirement that a state establish UIC regulatory programs and because the program is a state, rather than a federal program.

*E. Executive Order 13132: Federalism*

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government.

*F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments*

This action does not have Tribal implications as specified in Executive Order 13175. This action contains no federal mandates for Tribal governments and does not impose any enforceable duties on Tribal governments. Thus, Executive Order 13175 does not apply to this action.

*G. Executive Order 13045: Protection of Children From Environmental Health and Safety Risks*

The EPA interprets Executive Order 13045 as applying only to those regulatory actions considered significant under section 3(f)(1) of Executive Order 12866 and that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of ''covered regulatory action'' in section 2–202 of the Executive Order. This action is not subject to Executive Order 13045 because it approves a state program.

*H. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use*

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

*I. National Technology Transfer and Advancement Act*

This action does not involve technical standards.

*J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations; Executive Order 14096: Revitalizing Our Nation's Commitment to Environmental Justice for All*

EPA believes that it is not practicable to assess whether the human health or environmental conditions that exist prior to this action result in disproportionate and adverse effects on communities with EJ concerns. There currently are no Class VI wells permitted in Louisiana and because this is a procedural action. The EPA has reviewed Louisiana's proposed approach to environmental justice, as outlined in the Program Description and Class VI MOA addendum, and described in section IV.B of this preamble. The EPA considers Louisiana's Class VI primacy application to fully integrate environmental justice and equity considerations into the state's UIC Class VI program, while ensuring protection of USDWs. This action would provide Louisiana with primacy under SDWA section 1422 for a UIC Class VI program, pursuant to which Louisiana will implement a program that meets the EPA's requirements for UIC Class VI programs.

*K. Congressional Review Act (CRA)*

This action is subject to the CRA, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

### VII. References

Memorandum of Agreement Addendum 3 between the State of Louisiana and EPA, Region VI for the UIC Class VI Program, signed by the EPA Regional Administrator on March 3, 2023.
State of Louisiana Class VI Underground Injection Control Program 1422 Description, April 2021.
USEPA. 2012. Geologic Sequestration of Carbon Dioxide—UIC Program Class VI Well Project Plan Development Guidance. August 2012. Office of Water. EPA 816–R–11–017
USEPA. 2018. Geologic Sequestration of Carbon Dioxide—UIC Program Class VI Implementation Manual for UIC Program Directors. January 2018. Office of Water. EPA 816–R–18–001
USEPA. 2022. U.S. Environmental Protection Agency. EPA Administrator's EJ Letter to State Governors, from Michael S. Regan, EPA Administrator. (December 9, 2022).
USEPA. 2023a. U.S. Environmental Protection Agency. EPA Administrator's EJ Letter to Tribal leaders, from Michael S. Regan, EPA Administrator. (January 11, 2023).
USEPA. 2023b. U.S. Environmental Protection Agency. Memorandum to Water Division Directions, Regions I–X, from Radhika Fox, Office of Water. Environmental Justice Guidance for UIC Class VI Permitting and Primacy (August 17, 2023).

### List of Subjects in 40 CFR Part 147

Environmental protection, Incorporation by reference, Indian lands, Intergovernmental relations, Reporting and recordkeeping requirements, Water supply.

**Michael S. Regan,**

*Administrator.*

For the reasons set forth in the preamble, EPA amends 40 CFR part 147 as follows:

### PART 147—STATE, TRIBAL, AND EPA-ADMINISTERED UNDERGROUND INJECTION CONTROL PROGRAMS

■ 1. The authority citation for part 147 continues to read as follows:

**Authority:** 42 U.S.C. 300f *et seq.;* and 42 U.S.C. 6901 *et seq.*

■ 2. Amend § 147.950 by:
■ a. Revising the section heading, the introductory text, and paragraph (a);
■ b. Adding a paragraph (b) heading and adding paragraphs (b)(3) and (4) and (c)(4); and
■ c. Revising paragraph (d).

The revisions and additions read as follows.

### § 147.950 State-administered program—Class I, II, III, IV, V and VI wells.

The UIC program for Class I, II, III, IV, and V wells in the State of Louisiana, except those wells on Indian lands, is the program administered by the Louisiana Department of Natural Resources approved by EPA pursuant to sections 1422 and 1425 of the SDWA. Notice of this approval was published in the **Federal Register** on April 23, 1982; the effective date of this program is March 3, 1982. The UIC Program for Class VI wells in Louisiana, except those located on Indian lands, is the program administered by the Louisiana

Department of Natural Resources, approved by EPA pursuant to SDWA section 1422. The effective date of this program is February 5, 2024. The UIC program for Class I, II, III, IV, V, and VI wells in the State of Louisiana, except those located on Indian lands, consists of the following elements, as submitted to EPA in the State's program application and program revision application.

(a) *Incorporation by reference.* The requirements set forth in the state statutes and regulations approved by the EPA for including in ''EPA-approved Louisiana SDWA § 1422 and § 1425 Underground Injection Control Program Statutes and Regulations for Well Classes I, II, III, IV, V, and VI, dated November 8, 2023, and listed in table 1 to this paragraph (a), are hereby incorporated by reference and made a part of the applicable UIC program under the SDWA for the State of Louisiana. The Director of the Federal Register approves this incorporation by reference in accordance with 5 U.S.C. 552(a) and 1 CFR part 51. Copies of the State of Louisiana's statutes and regulations that are incorporated by reference may be inspected at the U.S. Environmental Protection Agency, Region VI Library, U.S. Environmental Protection Agency, 1201 Elm Street, Suite 500, Dallas, Texas 75270 and the U.S. Environmental Protection Agency, Water Docket, EPA Docket Center (EPA/DC), EPA WJC West, Room 3334, 1301 Constitution Ave. NW, Washington, DC 20004. If you wish to obtain materials from the EPA Regional Office, please call (214) 665–7515, or from the EPA Headquarters Library, please call the Water Docket at (202) 566–2426. You may also view this material at the National Archives and Records Administration (NARA). For information on the availability of this material at NARA, visit *www.archives.gov/federal-register/cfr/ibr-locations.html* or email *fr.inspection@nara.gov.*

TABLE 1 TO PARAGRAPH (a)—EPA-APPROVED LOUISIANA SDWA SEC. 1422 AND SEC. 1425 UNDERGROUND INJECTION CONTROL PROGRAM STATUTES AND REGULATIONS FOR WELL CLASSES I, II, III, IV, V, AND VI

| State citation | Title/subject | State effective date | EPA approval date |
|---|---|---|---|
| Louisiana Revised Statutes Annotated §§ 30:1–30:24. | Minerals, Oil, and Gas and Environmental Quality. | January 1, 1975, and Supp. 1982 | June 25, 1984. |
| Louisiana Administrative Code 43: XVII Chapter 1 (Statewide Order No. 29–N–1). | Underground Injection Control Program Regulations for Class I, III, IV, and V wells. | February 20, 1982, as amended June 1, 1985 and January 20, 1986. | March 6, 1991. |
| Louisiana Administrative Code 43: XIX Chapters 1–6 (Statewide Order No. 29–B). | Statewide Order Governing the Drilling for and Producing of Oil and Gas in the State of Louisiana. | August 26, 1974 as amended July 20, 1980, January 1 1981, February 20, 1982, May 20, 1983, May 20, 1984, and July 1 1985. | March 6, 1991. |
| Louisiana Administrative Code 43: XVII Chapter 3 (Statewide Order No. 29–M). | Hydrocarbon Storage Wells in Salt Dome Cavities. | July 6, 1977, as amended October 2, 1978, June 8, 1979. | June 25, 1984. |
| Louisiana Revised Statutes Annotated §§ 30:1101–30:1112. | Louisiana Geologic Sequestration of Carbon dioxide Act. | July 10, 2009 as amended June 14, 2023 | January 5, 2024, **FEDERAL REGISTER** CITATION]. |
| Louisiana Administrative Code 43: XVII Chapter 36 (Statewide Order No. 29–N–6). | Class VI Injection Wells | January 20, 2021 | January 5, 2024, [**FEDERAL REGISTER** CITATION]. |

(b) *Memorandum of Agreement (MOA).* \* \* \*

(3) Memorandum of Agreement Addendum 3 between the State of Louisiana and EPA, Region VI for the UIC Class VI Program, signed by the EPA Regional Administrator on March 3, 2023.

(4) Letter from Governor of Louisiana to Regional Administrator, EPA Region VI, March 4, 2021.

(c) \* \* \*

(4) Attorney General's Statement ''Attorney General's Statement to Accompany Louisiana's Underground Injection Control Program Class VI Primacy Application,'' signed by the Attorney General for the State of Louisiana, February 10, 2021.

(d) *Program Description.* The Program Description and any other materials submitted as part of the application or amendment thereto, and the Program Description and any other materials submitted as part of the program revision application or amendment thereto.

[FR Doc. 2024–00044 Filed 1–4–24; 8:45 am]
**BILLING CODE 6560–50–P**

# DEPARTMENT OF TRANSPORTATION

**Federal Motor Carrier Safety Administration**

**49 CFR Parts 384 and 386**

[Docket No. FMCSA–2023–0174]

**RIN 2126–AC60**

## General Technical, Organizational, Conforming, and Correcting Amendments to the Federal Motor Carrier Safety Regulations; Correction

**AGENCY:** Federal Motor Carrier Safety Administration (FMCSA), Department of Transportation (DOT).

**ACTION:** Correcting amendments.

**SUMMARY:** In a final rule published in the **Federal Register** on November 17, 2023, FMCSA amended its regulations by making technical corrections throughout the Federal Motor Carrier Safety Regulations (FMCSRs). The final rule had an incorrect paragraph number in the instruction for an amendment and, in an amendment replacing a term, erroneously failed to replace the possessive form of the term. The Agency corrects these errors.

**DATES:** This correction is effective January 5, 2024.

**FOR FURTHER INFORMATION CONTACT:** Mr. Nicholas Warren, Regulatory Development Division, Office of Policy, FMCSA, 1200 New Jersey Avenue SE, Washington, DC 20590–0001; (202) 366–6124; *nicholas.warren@dot.gov.*

**SUPPLEMENTARY INFORMATION:** On November 17, 2023, FMCSA published a final rule (88 FR 80169) that amended its regulations by making technical corrections throughout the FMCSRs. The rule made minor changes to correct inadvertent errors and omissions, remove or update obsolete references, and improve the clarity and consistency of certain regulatory provisions. The rule also made a change to its rules of organization, procedures, and practice. Through this document, FMCSA corrects two errors in that final rule.

### Correction

First, in amendment no. 48, the instruction incorrectly identified paragraph (b)(2) of § 384.209 as one of

# EXHIBIT B

# CERTIFICATE OF SERVICE

In accordance with Rule 15(c) of the Federal Rules of Appellate Procedure, the undersigned hereby certifies that on this 20th day of February, 2024, a true copy of this **PETITION FOR REVIEW** was served via U.S. Mail on the following parties that may have participated in the underlying procedure:

    Monique M. Edwards, Commissioner
    State of Louisiana Department of Natural Resources
    Office of Conservation
    617 North Third Street, 9th Floor
    Baton Rouge, Louisiana 70802

                                          /s/ *James Yskamp*
                                          James Yskamp

# EXHIBIT C

# LIST OF RESPONDENTS

Pursuant to Federal Rule of Appellate Procedure 15(c), Petitioners hereby provide a list of Respondents, specifically identifying the Respondents' names and the addresses where Respondents may be served with copies of the Petition for Review:

United States Environmental Protection Agency
1200 Pennsylvania Avenue NW
Washington, DC 20460

Michael S. Regan, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue NW
Mail Code 1101A
Washington, DC 20460

/s/ *James Yskamp*
James Yskamp (PA319444)
25000 Euclid Ave, Ste. 305
PMB 351
Euclid, OH 44117
Telephone: (570) 404-0237
Fax: (312) 667-8961
jyskamp@earthjustice.org

*Counsel for Petitioners*